# The Guardians of the Poor of the City of Philadelphia *against* William Lawrence.

Where the plaintiff or his attorney deems it necessary to put an officer in the defendant's house, to preserve the lien of an execution, the withdrawing of him and suffering the defendant to go on as usual with his business, is a relinquishment of the execution.

MOTION on behalf of the plaintiffs, to take the money raised by the sale of the defendant's goods, out of court.

It appeared, that an execution had issued against the real and personal property of William Lawrence, as collector of the poor rates, and also of Robert Erwin and Joseph Bispham, the sureties in his official bond, on the 16th March 1804.

On the next day Lawrence pressed the treasurer of the poor to give him a respite for 60 days, but he would only indulge him for two days. On the 22d March, Zaligman Phillips, the attorney of the plaintiffs, directed the sheriff by a note, to raise the money in the most expeditious manner, against all the defendants; and on the same day, the goods were levied on by one of the sheriff's officers, and a schedule of them taken.

On the 26th March, Phillips again wrote to the sheriff, to use all diligence to collect the money. On the 29th March, Bispham gave his note to Erwin for $1639 and 60 cents, payable in 60 days, who indorsed it to the plaintiffs, and a receipt was given by their attorney for the note, which when paid, was to go to the credit of the duplicate. Previous thereto, when the officers levied on the goods, he placed a person in the house to keep the possession of them. When Mr. Phillips received the note from Erwin, he wrote to the sheriff on the same day to discharge the goods, (or withdraw the execution) as the matter was compromised. This note was not produced to the court, having been mislaid; but two witnesses proved, that they had seen it in the sheriff's office, in the hand writing of Phillips; but the sheriff's written order to Thomas Fisher, his bailiff, dated on the same 29th March, was produced, wherein he directed him " to with-" draw the man who is in custody of the defendant's property, " it lying at defendant's risk. Lawrence will pay him 7s. 6d. " per day." The word defendant's was evidently inserted by mistake, instead of plaintiffs.

In pursuance thereof, the person who was left in the house to keep possession went away; and Lawrence opened his shop, and followed his business as formerly, until a *fieri facias* issued against *him on the 13th April following, and Samuel Pancoast, his surety, at the suit of the mayor, aldermen, and commonalty of the city, for the arrears of other taxes, whereof he was collector. [*195

The goods were levied thereupon and the shop again was shut up; and the goods were sold at public vendue upon the 20th April, and 1st June 1804, under the latter execution.

[Welch *v.* Murray.]

The contest, to which of the executions the money arising on the sales should be applied, was in fact between Erwin and Pancoast, the different sureties of the defendant Lawrence.

After considerable argument by Messrs. E. Tilghman, M. Levy and Phillips, for the plaintiffs, and Messrs. Hallowel, Porter and J. Sergeant, for the defendant, the court said, that they had heretofore declared their opinions in several cases, that by the practice of Pennsylvania, the plaintiff did not lose his lien on a *fi. fa.* by the sheriff's not removing the goods levied upon, unless their continuance in the defendant's possession, led to a false credit and injured third persons. The practice was different in England, which it seems has been adopted by the Circuit Court of the United States, for this district. It is there held, that the goods of the defendant must be removed to a place of safe custody in a reasonable time, otherwise the officer who was placed in the house would become a trespasser ; and the late practice in this city is said to be conformable thereto. Such appear to have been the sentiments of Mr. Phillips, the plaintiff's attorney on the present occasion ; and if he and the sheriff judged it necessary, in order to preserve the lien of the first execution on the goods, to keep an officer in the defendant's house, the withdrawing of him afterwards, and suffering the defendant to go on with his usual business, must be deemed a relinquishment of the effect of that execution. That point being established to the satisfaction of the court, the motion must be denied.

The plaintiff's counsel cited Chancellor *v.* Philips, Cummins *v.* M'Dougal, Levy *v.* Wallace, and Swift *et al. v.* Kantner, decided in this court.

The defendant's counsel cited 1 Wils. 44. 1 Vez. 245. 2 Bla. Rep. 1218. United States *v.* Cunningham, decided 26th May 1802, in Circuit Court U. S., and Barnes *v.* Billington, April 1803, in same court.